IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-78 |
| | ) | |
| PHILLIP R. WRIGHT | ) | |

## **MEMORANDUM AND ORDER**

The purpose of this memorandum and order is to address one the defendant's objections to the presentence report, that is, whether the defendant's prior convictions are crimes of violence. The government has responded and has supplied the court with the charging documents and transcript of the defendant's pleas to the charges related to the prior convictions. The defendant has filed a reply brief. The court finds that the record is sufficient to consider the issue without oral argument.

The defendant pled guilty in this court to being a felon in possession of a firearm. The presentence report sets out the base offense level for this offense at 20, rather than 14, because "the defendant committed [a] part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." USSG § 2K2.2(a)(4(A). In this case,

the defendant was convicted in Tennessee on September 27, 2000, of two counts of Child Abuse and Neglect. Tenn. Code Ann. § 39-15-401(a). That section provides:

> (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits a Class A misdemeanor; provided, that if the abused or neglected child is six (6) years of age or less, the penalty is a Class D felony.

There is no dispute that the child involved in the offenses was under six years old, so the offenses to which the defendant pled guilty were felonies.

The issue before the court is whether these convictions qualify as crimes of violence as that term is defined by the federal sentencing guidelines so as to trigger the increase to the defendant's base offense level. Section 4B1.2(a) of the Sentencing Guidelines provides:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>     (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>     (2) is burglary of a dwelling, arson, or extortion, involves uses of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.[1]

---

[1] This definition is identical to the definition of "violent felony" in the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e)(2)(b).

For the reasons discussed below, the court finds that the defendant's prior convictions are crimes of violence as that term is defined in the guidelines and that the defendant's base offense level was appropriately set at 20.

In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court addressed the issue of what information and documents a court may consider when determining the character of the offense to which the defendant pled guilty. The offenses at issue in *Shepard* were prior Massachusetts convictions for burglary. The Court stated that if the underlying burglary statute is "generic," that is, under the statute a conviction would necessarily mean that the defendant entered a "building or structure, with intent to commit a crime," then the district court could only consider the "fact of the conviction and the statutory definition of the prior offense." *Id.* at 17 (discussing *Taylor v. United States*, 495 U.S. 575 (1990) and labeling the type of review as the "categorical approach"). However, if the burglary statute is broader than generic burglary, and the defendant's conviction was based on a guilty plea, then the district court could consider "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26.

This court's first step then is to determine whether it can be determined from the fact of the defendant's conviction and the statutory language

3

of the offense that the defendant did or did not commit a crime of violence as that term is defined in the guidelines. If the statutory definition is ambiguous and the defendant pled guilty, then the court may consider the types of documents suggested by the *Shepard* decision to make the determination. *See Chambers v. United States*, 129 S. Ct. 687 (2009) (finding that when the state statute groups more than one category of offenses together, the categorical approach requires the court to determine the right category); *United States v. Baker,* 559 F.3d 443, 452 (6th Cir. 2009).

The court finds that Tennessee's statutory definition of the offense of Child Abuse and Neglect is ambiguous because the statute may be violated in two different ways depending on the mens rea of the offender. *See United States v. Bass*, 315 F.3d 561, 566 (6th Cir. 2002) (determining that the Tennessee child abuse statute contains two different classifications). First, the statute may be violated when the offender knowingly treats a child in such a manner as to inflict injury. Second, the statute may be violated when the offender neglects the child and the child's health and welfare are adversely affected. Thus, the categorical approach cannot solve the dilemma, and the court may consider other documents.

The documents submitted by the government show that the defendant was originally charged with aggravated abuse of a child, but pled guilty to two counts of non-aggravated abuse. No plea agreement has been provided,

4

but the transcript of the plea hearing is in the record. The district attorney for the State read the following into the record before the defendant entered his plea:

> [The victim] has a date of birth of 3/29/99. The state's proof would have been that while in custody in care of Mr. Right [sic], Mr. Right did cause injury to the child, specifically to the left arm. I believe it was to the humerus area of the left arm and also an injury to the femur, the right femur of the child. These were fractures that were revealed on X-rays at Vanderbilt University Medical Center. Dr. Gay at Vanderbilt University Medical Center would be available to testify that *these injuries were the result of non-accidental trauma, with a result of the twisting or jerking of the limb in question* . . . .

Doc. 25, exh. 3 at p. 9 (emphasis added). The trial judge then asked the defendant to stand, reminded him that he just heard the district attorney's statement, and asked him, "What is your best interest plea, guilty or not guilty?" Doc 25, exh. 3 at p. 10. The defendant said, "Guilty" without any qualifications. Thus, when he entered his plea the defendant agreed that the trauma to the child was "non-accidental" and caused by the "twisting or jerking" of the child's limbs. Based on the transcript of the plea proceedings, this court finds that the defendant was convicted of the portion of the statute that prohibits knowingly treating a child in such a manner as to inflict injury, and that the "neglect" portion of the statute is not implicated.

The next question is whether the portion of the statute under which the defendant was convicted is a crime of violence. The court finds that

5

knowingly treating a child in such as manner as to inflict injury has "as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a). Thus, the defendant's convictions for child abuse were crimes of violence.

The defendant argues that the recent Supreme Court decision in *Begay v. United States*, 128 S. Ct. 1581 (2008) "has completely changed the analysis" of whether offenses are crimes of violence. Likewise, the government suggests that *Begay* "altered the analysis" for determining whether a prior offense meets the definition of a crime of violence. In *Begay*, the Supreme Court was asked to decide whether a violation of New Mexico's DUI statute was a crime of violence under the residual or "catch-all" phrase found in the second clause of the guideline definition. The Court specifically rejected any application of the first clause stating, "We also take as a given that DUI does not fall within the scope of the Act's *clause (i)*." *Id.* at 1584. The Court then determined that the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" is related to the other terms in the second clause, and does not apply to every crime with a serious potential risk of injury. The Court held that "the examples in clause (ii) limit the crimes that are similar to the examples themselves." *Id.* at 1585. "The listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586.

6

It is this last standard that the parties urge the court to use to determine whether Tennessee's child abuse statute is a crime of violence. The court has carefully considered *Begay* and does not believe that it is necessary to reach the issue of whether the Tennessee statute defines an offense that is "purposeful, violent and aggressive." The court has already determined that the abuse portion of the statute meets the crime-of-violence definition in clause (i) because it involves the use, attempted use, or threatened use of physical force against a person.

The defendant contends that because an offender can be found guilty of the offense by neglect, and neglect is not "purposeful, violent or aggressive," that the offense is not a crime of violence. The court rejects the defendant's contention that he could have been convicted of the neglect portion of the statute. He was not. He was convicted of the abuse portion of the statute as is evident from the transcript of the plea hearing.

On the other side, the government argues that the abuse portion of the Tennessee statute requires a purposeful act ("knowing") and violent or aggressive conduct (treats a child in such a manner as to inflict injury) making a conviction for child abuse a crime of violence. To the extent that *Begay* might apply, the court agrees with the government that the Tennessee child abuse statute arguably defines an offense that is purposeful, violent and aggressive.

The court has reviewed the other cases cited by both parties, and

7

Case 3:08-cr-00078-RLJ-HBG   Document 30   Filed 08/31/09   Page 7 of 8   PageID #: 124

finds it unnecessary to review them individually.[2]  For the reasons discussed above, the court finds that the defendant's 2000 convictions in Tennessee for child abuse were crimes of violence within the guidelines definition, and the defendant's base offense level was properly set at 20 (absent any other enhancements or deductions).

It is hereby **ORDERED** that the defendant's objection to the finding in the presentence report that he has a prior conviction for a crime of violence is **OVERRULED**.  The court is aware that the defendant has another objection involving an enhancement for possession of a stolen firearm.   That objection will be addressed at the time of sentencing.

ENTER:

*s/ Leon Jordan*
United States District Judge

---

[2]  The *United States v. Wilson*, 568 F.3d 670 (8th Cir. 2009) opinion is interesting in that the court specifically declined to discuss whether the Missouri child abuse statute involved clause (i) and, using *Begay*, determined that the statute met the requirements of the residual phrase in clause (ii).